IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDEL MORALES MENDEZ, | No. C 05-2632 MJJ (PR) |
| Petitioner, | ***AMENDED* ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |
| vs. | |
| A.P. KANE, | |
| Respondent. | |

Petitioner, a California prisoner incarcerated at the California State Prison, San Quentin, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a 2004 decision by the California Board of Parole Hearings ("Board")[1] finding him unsuitable for parole. Respondent has filed an answer, and petitioner has filed a traverse.

**BACKGROUND**

Petitioner was convicted of second degree murder, assault with a deadly weapon, and use of a firearm in 1992. He was sentenced to a term of fifteen years to life in state prison for the murder, plus three consecutive years for the assault charge, and three concurrent years for the firearm enhancement. In 2004, when petitioner had served approximately 12 years in prison, the Board found him unsuitable for parole. In unsuccessful habeas petitions filed in all three levels of the state courts, petitioner claimed that the Board's granting his request for postponement violated his constitutional rights.

---

[1] At the time of the decision, the Board was called the California Board of Prison Terms.

G:\PRO-SE\MJJ\HC.05\mendez.dny.wpd

**DISCUSSION**

**A.     Standard of Review**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or the laws or treaties of the United States."  28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).  Under AEDPA, this Court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" clearly established United States Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, 'or if it confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  Early v. Packer, 537 U.S. 3, 8 (2002) (quoting Williams, 529 U.S. at 405-06).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Williams, 529 U.S. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); Rice v. Collins, 126 S. Ct. 969, 975 (2006).

B.     Analysis of Claim

Petitioner claims that the Board's decision violated his right to due process because the decision was not based on "some evidence".[2] A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. <u>Sass v. California Board of Prison Terms</u>, 461 F.3d 1123, 1128-29 (9th Cir. 2006) (adopting some evidence standard for disciplinary hearings outlined in <u>Superintendent v. Hill</u>, 472 U.S. 445, 454-55 (1985)); <u>see also</u> <u>Irons v. Carey</u>, 479 F.3d 658 (9th Cir. 2007).[3] The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. <u>See</u> <u>Hill</u>, 472 U.S. at 455. An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence. <u>Id.</u> The relevant question is whether there is any evidence in the record that could support the conclusion reached by the [administrative] board. <u>See id.</u> Additionally, the evidence underlying the Board's decision must have some indicia of reliability. <u>McQuillion v. Duncan</u>, 306 F.3d 895, 904 (9th Cir. 2002).

In assessing whether or not there is "some evidence" supporting the Board's denial of parole, this Court must consider the regulations which guide the Board in making its parole suitability determinations. California Code of Regulations, title 15, section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." The regulations direct the Board to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b). Further, they list sets of circumstances tending to indicate whether or not an inmate is suitable for parole. Cal. Code of Regs., tit. 15, § 2402(c)-(d).

---

[2] This claim is set forth in the conclusion of the petition for review to the California Supreme Court, which petitioner attaches as an exhibit to the instant petition and to which he cites as setting forth the grounds for habeas relief he seeks in this court. (Petition at 6, Ex. I at 6.)

[3] Respondent argues that the Ninth Circuit is wrong in finding <u>Hill</u>'s "some evidence" requirement applicable to parole denials. This Court, of course, has no discretion to disregard or overrule applicable decisions from the Ninth Circuit.

G:\PRO-SE\MJJ\HC.05\mendez.dny.wpd          3

The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. 15 Cal. Code of Regs. § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. 15 Cal. Code of Regs. § 2402(d). These circumstances are meant to serve as "general guidelines," giving the Board latitude in the weighing of the importance of the combination of factors present in each particular case. Cal. Code of Regs., tit. 15, § 2404(c). Once the prisoner has been found suitable for parole, the regulations set forth a matrix to set a base term. 15 Cal. Code Regs. § 2403(a).[4]

The California Supreme Court has found that the foregoing statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity. In re Dannenberg, 34 Cal. 4th 1061, 1070-71 (2005).

> While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should "normally" receive "uniform" parole dates for similar crimes, subdivision (b) provides that this policy applies "*unless* [the Board] determines" that a release date cannot presently be set because the particular offender's crime and/or criminal history raises "*public safety*" concerns requiring further indefinite incarceration. (Italics added.) Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole

---

[4] The matrix provides three choices of suggested base terms for several categories of crimes: for second degree murders, the matrix of base terms ranges from the low of 15, 16, or 17 years, to a high of 19, 20 or 21 years, depending on certain facts of the crime. Id. at § 2403. One axis of the matrix concerns the relationship between murderer and victim and the other axis of the matrix concerns the circumstances of the murder. The choices on the axis for the relationship of murderer and victim are "participating victim," "prior relationship," "no prior relationship," and "threat to public order or murder for hire." The choices on the axis for the circumstances of the murder are "indirect," "direct or victim contribution," "severe trauma," or "torture." Each of the choices are further defined in the matrix. See 15 Cal. Code Regs. § 2403(c).

> date on the grounds the particular offender's criminality presents a *continuing public danger*.

Id. at 1070 (emphasis, brackets, and parentheses as in original).  In sum, "the Board, exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually." Id. at 1071.  The California Supreme Court's determination of state law is binding in this federal habeas action.  Hicks v. Feiock, 485 U.S. 624, 629 (1988).[5]

Here, the Board denied parole on the basis of petitioner's commitment offense, his prior criminal and social history, his behavior in prison, and his parole plans.

### (I) Commitment Offense

Under state law, the Board may consider the gravity of the commitment offense in assessing an inmate's suitability for parole.  Cal. Penal Code § 3041(b); 15 Cal. Code Regs, § 2402(c)(1).  The factors to be considered in determining whether the offense was committed in an "especially heinous, atrocious or cruel manner," so as to indicate unsuitability are whether: (1) "multiple victims were attacked, injured or killed in the same or separate incidents;" (2) the offense was committed in " a dispassionate and calculated manner, such as an execution-style murder;" (3) "the victim was abused, defiled or mutilated during or after the offense;" (4) the offense was committed in a manner demonstrating "an exceptionally callous disregard for human suffering;" and (5) "the motive for the crime is explicable or very trivial in relation to the offense."  Id.

The California Supreme Court also has determined that the facts of the crime can alone support a sentence longer than the statutory minimum even if everything else about the prisoner is laudable.  "While the board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative

---

[5]In his third claim, petitioner asserts his right to due process was violated because the Board did not apply the matrix under California Penal Code § 3041(a) prior to determining whether he presented a continuing public danger under § 3041(b).  As discussed above, Rosenkrantz explicitly held that such an application of § 3041 was proper as a matter of state law, a holding binding on this Court.  As the Board's application of § 3041(b) prior to § 3041(a) did not violate state law, it certainly did not violate any state law interest that might be protected by due process.

G:\PRO-SE\MJJ\HC.05\mendez.dny.wpd         5

analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (2002) ("The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole" but might violate due process "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense."). Moreover, the federal constitutional guarantee of due process does not preclude the parole board from relying on unchanging factors such as the circumstances of the commitment offense or the parole applicant's pre-offense behavior in determining parole suitability. Sass, 491 F.3d at 1129 (commitment offenses in combination with prior offenses provided some evidence to support denial of parole at subsequent parole consideration hearing); Irons, 479 F.3d at 660, 665 (finding commitment offense and prior offenses amounted to some evidence to deny parole).

The Board recited the facts of petitioner's offense as follows:[6]

> [B]etween 7 and 8 p.m. on March 5th, 1990 Santa Maria []police officers Larry Davis [] and Paul Flores [] arrived at the Santa Maria apartment of Salvador Garcia [] in response to a call regarding a disturbance. They found Manuel Castro [] who appeared terrified. Castro had bruises and welts and was bleeding from the head. In the apartment Davis found Garcia lying on the floor bleeding. Garcia subsequently died from two gunshot wounds to the head. He had also suffered an injury to his arm caused by some blunt object with a pretty rigid right angle to it. The rifle used in the shooting was not found. Based on statements Garcia made to paramedics Flores arrested Castro and took him to a hospital for treatment of his wounds. Flores advised Castro of his constitutional rights, which Castro waived. Castro told the officers he had been visiting Garcia from - - when Jose Luis Mendes, Salvador Enriquez [] and Appellant entered. Enriquez attacked Castro while the other two attacked Garcia. Castro state that Appellant brought the rifle and that Mendez picked it up when Appellant dropped it as he fought with Castro. Mendez then shot Garcia. Enriquez said they would shoot Castro also but the other two assailants had already left. Enriquez then struck Castro with a pipe. After Enriquez left Castro called for help and went out on the balcony where the officers found him. Flores, who spoke fluent English, later assisted detective Greg Ross in obtaining a further statement from Castro. Castro told Ross essentially the same facts he told Flores. He said that Appellant carried a .22 caliber rifle into the apartment and struck Garcia with it. He did not state that Appellant was absent during the fight. On March 6th, 1990 detective William Marquez met with Castor who provided substantially the same facts. Castro told Marquez that Appellant brought the rifle and struck Garcia with the butt of the gun.

---

[6]The Board read the factual background from the California Court of Appeal's decision in petitioner's case.

G:\PRO-SE\MJJ\HC.05\mendez.dny.wpd        6

      Appellant told Mendez to pick up the gun when it dropped and Mendez did so, then shot Garcia.

(Resp. Ex. 2 at 12-13.)

According to the probation report, petitioner's accomplices were his uncle and his cousin, and one of the victims was a roommate who had quarreled with petitioner's cousin. (Resp. Ex. 5 at 4.)  The victims were seated in the living room watching television when they were attacked, and although petitioner initially became involved to help his cousin, petitioner led the attack insofar as he was the first person inside the victim's house, he carried the firearm, and initially attacked Garcia with the butt of the rifle. (Resp. Ex. 4.)  Petitioner was ultimately arrested in Colorado over a year later in response to a domestic disturbance. (Id.)  On the day of the offense, petitioner and his cousin had spoken to the police about problems with his cousin's roommates, and they were told to return to the station in two days. (Id.)  Petitioner had a recent conviction for driving under the influence, and prior arrests for a separate incident of driving under the influence and for a domestic disturbance.  At the Board hearing, petitioner maintained his innocence and denied involvement in the crime. (Resp. Ex. 5 at 13-14.)

The foregoing facts of the offense provided sufficient evidence that the murder was carried out in an "especially heinous, atrocious or cruel manner" under 15 Cal. Code Regs. § 2402(c)(1).  In this case, petitioner and two others ganged up on two victims who were passively watching television, beat them, and murdered Garcia.  Moreover, there was evidence that the crime was calculated in advance.  Lastly petitioner's motive, to assist his cousin in avenging a dispute with his roommate, was very trivial in relation to the offense of murder.  Under these circumstances, there is "some evidence" that the commitment offense met the factors set forth in the state's regulations for indicating that the murder was committed in an "especially heinous, atrocious or cruel manner" such that petitioner was not suitable for parole.

The Court notes the concern expressed by the Ninth Circuit in Biggs v. Terhune that "over time" the Board's "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment" would "raise serious questions involving his liberty interest in parole."  334 F.3d 910, 916 (9th Cir. 2003).  The Ninth Circuit has recently criticized this

statement as beyond the scope of the dispute before the court: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." Sass, 461 F.3d at 1129.  In any event, the challenged parole denial here took place after petitioner had served only 12 years in state prison, which, like the petitioners in Sass and Irons, was less than the sentence's minimum term of 15 years and therefore does not yet implicate the concerns raised in Biggs.  See, e.g., Irons, 479 F.3d at 661 (upholding reliance upon commitment offense to deny parole at fifth parole hearing after petitioner had served 16 years in prison, which was less than the minimum term); Sass, 461 F.3d at 1129 (same, for second and third parole hearings after petitioner had served 11 and 12 years in prison).

### (ii)   Additional Factors

There was additional evidence in support of other statutory factors indicating unsuitability for parole.  While in prison, petitioner had not sufficiently participated in self-help programs, he had insufficient residential plans for after parole, had shown no remorse, and a psychological report indicated that he had some mental health concerns[7] and had not accepted responsibility for the offense or explored its causes.  (Resp. Ex. 8, Ex. 2 at 20-24, Ex. 5 at 30-31. See 15 Cal. Code Regs. §§ 2402(c)(3),(5),(6) &(d)(2),(3),(8),(9).

Under the circumstances, there was "some evidence" that Petitioner was unsuitable for parole under the factors set forth in California's statutes and regulations for determining parole suitability.  Consequently, the Board's decision did not violate Petitioner's right to due process, and the state court opinions upholding the Board's denial of parole are neither "contrary to" or an "unreasonable application of "clearly established Federal law."  28 U.S.C. § 2254(d)(1).  Further, the Board's decision was not based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," because there was "some evidence" in the record to support the finding of Petitioner's unsuitability for parole.  28 U.S.C. § 2254(d)(2).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The December 6, 2007 Oder Denying Petition for a Writ of Habeas Corpus is VACATED.

---

[7]In prison he suffered paranoia and suicidal ideation.  (Resp. Ex. 5 at 3-5.)

G:\PRO-SE\MJJ\HC.05\mendez.dny.wpd          8

1   The Clerk shall close the file.

2   IT IS SO ORDERED.

3   DATED: 12/11/07

4   _____
    MARTIN J. JENKINS
5   United States District Judge

G:\PRO-SE\MJJ\HC.05\mendez.dny.wpd        9